*10 ORDER
(Petition Denied Without Prejudice)
AMANDA L. ROCKMAN, Interim Chief Judge.
INTRODUCTION
This case concerns whether the parent, Juanita Faye Tracy, can access monies on behalf of her minor child, J.M.T., DOB 04/08/1997, from the Children’s Trust Fund (hereinafter CTF) to pay for costs associated with private school tuition. The Court employs the standard enunciated in the Per Capita Distribution Ordinance (hereinafter Per Capita Ordinance), 2 HCC § 12.8c to assess the merit of the parent’s request. The analysis and holding of the Court follow below.
PROCEDURAL HISTORY
The petitioner, Juanita Faye Tracy, initiated the current action by filing the March 25, 2011 Petition for Release of Per Capita Distribution (hereinafter Petition ). Consequently, the Court issued a Summons, accompanied by the above-mentioned Petition, on March 25, 2011, and served the documents upon the respondent’s representative, Ho-Chunk Nation Department of Justice (hereinafter DOJ),[1] by personal service as permitted by HCN R. Civ. P. 5(C)(1). The Summon,s informed the respondent of the right to file an Answer within twenty (20) days of the issuance of the Summons pursuant to HCN R. Civ. P. 5(A)(2). The Summons also cautioned the respondent that a default judgment could result from failure to file within the prescribed time period.
The respondent, by and through DOJ Attorney Paul Rosheim, timely filed Notice and Motion to Dismiss along with Respondent’s Answer and Motion to Dismiss on April 13, 2011, asking the Court to dismiss the Petition. In response, on April 21, 2011, the Court issued an Order scheduling a Motion Hearing to allow the respondent to argue its Motion to Dismiss. On April 21, 2011, the Court issued *11 a Notice of Hearing to the parties informing them of the date, time, and location of the Motion Hearing. On May 10, 2011, the petitioner filed an untimely Response to Motion to Dismiss along with several attachments. The Court convened the Motion Hea.ri.ng on May 10, 2011 at 1:30 p.m. CDT. The following parties appeared at the Motion Hearing: Juanita Faye Tracy, petitioner, and DOJ Attorney Paul Rosheim, respondent’s counsel.
APPLICABLE LAW
PER CAPITA DISTRIBUTION ORDINANCE, 2 HCC§ 12
Subsec. 8. Minors and Other Legal Incompetents.
a. The interests of minors and other legally incompetent Members, otherwise entitled to receive per capita payments, shall, in lieu of payments to such minor or incompetent Member, be disbursed to a Children’s Trust Fund which shall establish a formal irrevocable legal structure for such CTFs approved by the Legislature as soon after passage of this Ordinance as shall be practical, with any amounts currently held by the Nation for passage for the benefit of minor or legally incompetent Members, and all additions thereto pending approval and establishment of such formal irrevocable structure, to be held in an account for the benefit of each such Member-beneficiary under the supervision of the Trial Court of the Nation. Trust assets of such CTFs shall be invested in a reasonable and prudent manner, which protects the principal and seeks a reasonable return.
b. Education Criterion.
(1) The trust assets oí each such account maintained for a minor shall be disbursed to the Member-beneficiary thereof upon the earlier of (i) said Member-beneficiary meeting the dual criteria if [sic ] (a) reaching the age of eighteen (18) and (b) producing evidence of personal acquisition of a high school diploma to the Department of Enrollment (HSED, GED or any similar substitute shall not be acceptable), or (ii) the Member reaches the age of twenty-five (25); provided that this provision shall not operate to compel disbursement of funds to Members legally determined to be incompetent. In the event a Member, upon reaching the age of eighteen (18) does not produce proof of personal acquisition of a high school diploma, such Member’s per capita funds shall be retained in the CTF account and any and all per capita distributions payable to said Member after reaching age 18 will be added to such fund and not be paid to the Member[,] and the CTF account and [sic ] shall be held on the same terms and conditions applied during the Member-beneficiary’s minority until the earliest to occur: (1) the Member produces the required diploma; (2) the Member reaches the age of twenty-five (25); or (3) the Member is deceased.
c.Funds in the CTF of a minor or legally incompetent Member may be available for the benefit of a beneficiary’s health, education, and welfare when the needs of such person are not being met from other Tribal funds or other state or federal public entitlement programs, and upon a finding of special need by the Ho-Chunk Nation Trial Court. In order to request such funds, the following provisions apply:
(1) A written request must be submitted to the Trial Court by the beneficiary’s parent or legal guardian detailing the purpose and needs for such funds.
(2) The parent or legal guardian shall maintain records and account to the Trial Court in sufficient detail to demonstrate that the funds disbursed were expended as required by this Ordinance and any other applicable federal law.
*12 (3) Any other standards, procedures, and conditions that may be subsequently adopted by the Legislature consistent with any applicable federal law shall be met.
HO-CHUNK NATION RULES OF CIVIL PROCEDURE
Rule 5. Notice of Service of Process.
(A) Definitions.
2. Summons—The official notice to the party informing him/her that he/she is identified as a party to an action or is being sued, that an Answer is due in twenty (20) calendar days (See HCN R. Civ. P. 6) and that a Default Judgment may be entered against them if they do not file an Answer in the prescribed time. It shall also include the name and location of the Court, the case number, and the names of the parties. The Summons shall be issued by the Clerk of Court and shall be served with a copy of the filed Complaint attached.
(C) Methods of Service of Process.
1. Personal Service. The required papers are delivered to the party in person by the bailiff, or when authorized by the Court, a law enforcement officer from any jurisdiction, or any other person not a party to the action who is eighteen (18) years of age or older and of suitable discretion.
3. After the first successful service of process, the Court and the parties will then perform all written communications through regular mail at that address. Therefore, each party to an action has an affirmative duty to notify the Court.
Rule 27. The Nation as a Party.
(B) Civil Actions. When the Nation is filing a civil suit, a writ of mandamus, or the Nation is named as a party, the Coin-plaint should identify the unit of government, enterprise or name of the official or employee involved. The Complaint, in the case of an official or employee being sued, should indicate whether the official or employee is being sued in his or her individual or official capacity. Service can be made on the Ho-Chunk Nation Department of Justice and will be considered proper unless otherwise indicated by these rules, successive rules of the Ho-Chunk Nation Court, or Ho-Chunk Nation Law.
Rule 58. Amendment to or Relief from Judgment or Order.
(A) Relief from Judgment. A Motion to Amend or for relief from judgment, including a request for a new trial shall be made within ten (10) calendar days of the filing of judgment. The Motion must be based on an error or irregularity that prevented a party from receiving a fair trial or a substantial legal error that affected the outcome of the action.
(B) Motion for Reconsideration. Upon motion of the Court or by motion of a party made not later than ten (10) calendar days after entry of judgment, the Court may amend its findings or conclusions or make additional findings or conclusions, amending the judgment accordingly. The motion may be made with a motion for a new trial. If the Court amends the judgment, the time for initiating an appeal commences upon entry of the amended judgment. If the Court denies a motion filed under this Rule, the time for initiating appeal from the judgment commences when the Court denies the motion on the record or when an order denying the motion is entered, whichever occurs first. If within thirty (30) days after the filing of such motion, and the Court does not decide a motion under this Rule or the judge does not sign an order denying the motion, the motion is considered denied. The time for initiating the appeal from judgment commences in ac *13 cordance with the Rules of Appellate Procedure.
(C) Motion to Modify. After the time period in which to file a Motion to Amend, of a Motion for Reconsideration has elapsed, a party may file a Motion to Modify with the Court. The Motion must be based upon new information that has come to the party’s attention that, if true, could have the effect of altering or modifying the judgment. Upon such motion, the Court may modify the judgment accordingly. If the Court modifies the judgment, the time for initiating an appeal commences upon entry of the modified judgment. If the Court denies a motion filed under this Rule, the time for initiating an appeal from the judgment commences when the Court denies the motion on the record or when an order denying the motion is entered, whichever occurs first. If within thirty (30) calendar days after the filing of such motion, and the Court does not decide the motion or the judge does not sign an order denying the motion, the motion is considered denied. The time for initiating an appeal from judgment commenees in accordance with the Rules of Appellate Procedure.
(D) Erratum Order or Re-issuance of Judgment. Clerical errors in a Court record, including the Judgment or Order, may be corrected by the Court at any time.
(E) Grounds for Relief. The Court may grant relief from judgments or orders on motion of a party made within a reasonable time for the following reasons: (1) newly discovered evidence which could not reasonably have been discovered in time to request a new trial; (2) fraud, misrepresentation or serious misconduct of another party to the action; (3) good cause if the requesting party was not personally served in accordance with Rule 5(e)(l)(a)(i) or (ii), did not have proper service and did not appear in the action; or (4) the judgment has been satisfied, released, discharged or is without effect due to a judgment earlier in time.
Rule 61. Appeals.
Any final Judgment or Order of the Trial Court may be appealed to the Supreme Court. The Appeal must comply with the Rules of Appellate Procedure, specifically Rules of Appellate Procedure, Rule 7, Right of Appeal. All subsequent actions of a final Judgment or Trial Court Order must follow the Rules of Appellate Procedure.
FINDINGS OF FACT
1. The parties received proper notice of the May 10, 2011 Motion Hearing.
2. The minor child, J.M.T., DOB 04/08/1997, is an enrolled member of the Ho-Chunk Nation, Tribal ID No. 439A006470.
3. The petitioner and mother of the minor child, Juanita Faye Tracy, is an enrolled member of the Ho-Chunk Nation, Tribal ID# 439A005451, and maintains a mailing address of 4110 W. 8 th Court, Wisconsin Dells, WI 53965. Pet. at 2.
4. The petitioner requested a release of CTF monies for costs associated with private schooling:
St. Mary’s High School
113 Duke of Gloucester Street
Annapolis, MD 21401
Pet. at 4.
5. Tuition for St. Mary’s High School is $13,220.00 per year. There is also a $1,000.00 registration fee and a $535.00 activity, campus ministry, PFA and retreat fee. Pet. at 5.
6. St. Mary’s High School awarded the petitioner $3,966.00 in tuition assistance to be deducted from the total tuition cost. Id.
*14 7. The HCN Tuition Assistance program has approved $2,500.00 for the benefit of J.M.T. every year since she was in kindergarten. Id. If this assistance is approved again the petitioner is requesting a total of $8,289.00 from the minor child’s CTF. Id.
8. According to the petitioner’s 2010 tax return, her total annual income is $49,256.00. The petitioner’s husband has been unemployed for about a year. Pet. at
5. However, the petitioner’s husband has gone back to work for a carpet cleaning and restoration business in Maryland. Mot. Hr’g (LPER at 6, May 10, 2011, 02:04:30 CDT)
9. The federal poverty level for a family of four (4) is $22,350.00 per year. 76 Fed.Reg. 3,637 (Jan. 20, 2011).
10. The petitioner owns a home in Wisconsin Dells valued around $325,000.00. The petitioner’s monthly mortgage payment is currently around $1,555.00. Mot. Hr’g (LPER at 13, May 10, 2011, 02:26:52 CDT).
11. Real estate agents advised the petitioner not to sell the property until the local real estate market recovered, as the petitioner would likely not be able to sell the home for its value. Id., 02:29:00 CDT.
12. The respondent recommended that the Court deny the petitioner’s request for monies associated with the private schooling. Id. at 18, 02:46:13 CDT.
DECISION
The Court applies a four-part test when determining the circumstances under which it would grant a release of monies from the CTF account of a minor tribal member. See In the Interest of Minor Child(ren): V.D.C., DOB 10/03/84, et al., by Debra Crowe v. HCN Office of Tribal Enrollment, CV 00-25 (HCN Tr.Ct., Apr. 6, 2001) at 7 (citing In the Interest of Minor Child: S.D.S., DOB 04/25/83, by Michelle R. DeCora v. HCN Office of Tribal Enrollment, CV 00-35 (HCN Tr.Ct., May 4, 2000) at 7). The Court derived the four-part test from language appearing in the Per Capita Ordinance, § 12.8c. Crowe at 7. First, the Court may only grant a release for the benefit of a beneficiary’s health, education, or welfare. Second, any such benefit must represent a necessity, and not a want or desire. Third, the parent or guardian must demonstrate special financial need. Finally, the petitioner must provide evidence of exhaustion of tribal funds and public entitlement programs. Id. at 8.
The Court closely examines each Petition for Release of Per Capita Distribution in fulfillment of its statutory obligation to supervise the CTF accounts. Per Capita Ordinance. § 12.8a. The Court performs this supervision against the backdrop of federal enabling legislation. Specifically, the Indian Gaming Regulatory Act requires that parents receive per cap-ita monies “in such amounts as may be necessary for the health, education, or welfare, of the minor.” Indian Gaming Regulatory Act, 25 U.S.C. § 2710(b)(3)(C) (emphasis added). The Court has focused upon this limitation in developing its case law, announcing basic principles and rudimentary understandings that have guided it through a variety of requests,
Foremost among these understandings is the recognition that petitioners are “asking that the Court do something very unusual and extraordinary, ie„ take money from children and give it to the parents.” In the Interest of the Minor Children: M.C., DOB 04/09/89, et al. by Myra Cunneen v. HCN Dep’t of Enrollment, CV 99-83 (HCN Tr.Ct., Jan. 21, 2000) at 3. The Court rightfully practices restraint when asked to serve as this instrumentality. The Court reasons that “no matter *15 what the financial plight of the parents, the ordinary and usual expenses for raising children should not be shifted to the children.” Id. at 6.
Only a verifiable claim of poverty can justify a parent’s failure to provide a child’s basic necessities of life: “adequate food, clothing, shelter, medical care, education [and] supervision.” Hocak Nation Children and Family Act, 4 HCC § 3.5bb, The Court, however, shall not relieve a parent of this responsibility if the impoverished condition of the family derives from poor parental decisions. The Court will not elevate a child to the status of provider as a consequence of regrettable choices made by the parent. Crowe at 13-14. “When a person becomes a parent, that parent inherently accepts the responsibility to proride for the health, education and welfare for that child or children.... As a parent, [he or she] has inherently accepted these financial obligations by bringing ... children into this world.” In the Interest of Gary Alan Funmaker, Sr. v. Ho-Chunk Nation, CV 96-39 (HCN Tr.Ct., Oct. 18, 1996) at 7.
Accordingly, the Court has only granted CTF releases for food, clothing, shelter or medical care in the most egregious of circumstances. See In the Interest of Minor Child: D.A.S., DOB 10/14/87, by Larry Swan v. HCN Office of Tribal Enrollment, CV 00-96 (HCN Tr.Ct., Dec. 18, 2000) (insufficient Social Security Income to satisfy clothing needs of twelve (12) year old child cared for by terminally ill single parent); In the Interest of Minor Child: D.M.S.T., DOB 07/01/83, by Roxanne Tallmadge-Johnson v. HCN Office of Tribal Enrollment, CV 00-14 (HCN Tr.Ct., Apr. 13, 2000) (inability of Medical Assistance to cover a sports-related injury of a teenager residing in a household with eleven (11) other minor children). For other requests relating to health, education or welfare, the Court has distinguished between cases where the child receives the direct, tangible benefit (orthodontics) as opposed to those where the request proves beneficial to the entire family (automobiles). The Court is certainly less inclined to grant the latter type of requests due to the presence of this distinction. Also, the Court typically will require the parent(s) to offer a greater financial contribution depending upon the circumstances.
The Court must determine whether the petitioner has satisfied the statutory standard for securing a release of CTF monies in the present case. Per Capita Ordinance, § 12.8c. A component part of the standard requires the petitioner to demonstrate that “the needs of [the minor] are not being met from other Tribal funds or other state or federal public entitlement programs.” Id. (emphasis added). Consequently, a petitioner seeking CTF monies for private schooling purposes must establish that available publie schooling does not meet the minor’s educational needs. A failure to do so will result in a denial of the request. See, e.g., In the Interest of Minor Child: G.N., DOB 02/25/00, by Julie Nakai v. HCN Office of Tribal Enrollment, CV 07-62 (HCN Tr.Ct., Nov. 9, 2007) at 6-7, 9-10 (holding that the petitioner could not simply claim the existence of unidentified studies purportedly indicting a state’s poor elementary educational system); In the Interest of Minor Children: D.L., DOB 05/27/91, et al. by Doracita Lonetree v. HCN Office of Tribal Enrollment, CV 06-26 (HCN Tr.Ct., June 16, 2006) at 6, 11-12 (deeming mere allegations of a poor student to teacher ratio as insufficient to demonstrate exhaustion). In each referenced case, the Court noted that “casting unsubstantiated aspersions at a public institution should not suffice for the purpose of having a minor satisfy educational costs.” Lonetree, CV 06-26 at 11.
*16 The Court must presume that the educational needs of a minor are reasonably being met by means of a free state resource. For example, in the State of Maryland, the Constitution of Maryland states that it “shall by Law establish throughout the State a thorough and efficient System of Free Public Schools” and further state law requires a “general system of free public schools.” Const, of Md„ Art. VIII, § 1.; Md. Education Code Ann. § 1-201 (2011). This provision is construed to mean that a public school education is free to all eligible students. The petitioner, therefore, must effectively demonstrate otherwise through testimony and documentary evidence. The Court will not release CTF monies based upon an educational preference as opposed to an educational need. See, e.g., In the Interest of Minor Children: Z.T.E., DOB 12/18/01, et al. by David Espinoza v. HCN Office of Tribal Enrollment, CV 08-80-31 (HCN Tr.Ct., Aug. 26, 2008) at 6, 9-10 (preferring the Montessori approach toward learning).
However, the Court has granted a few private schooling requests. The Court has granted a request for attendance at St. John’s Northwestern Military Academy in Delafield, WI, since the minor child had been expelled from public school and could not return to a state academic institution. In the Interest of Minor Child: B.K. W.B., DOB 02/10/91, by Cara Lee Murphy v. HCN Office of Tribal Enrollment, CV 06-67 (HCN Tr.Ct., Jan. 19, 2006) at 6-7, 10-11 (finding an absence of an available state educational resource); see also In the Interest of Minor Child: T.K., DOB 06/06/90, by Sara WhiteEagle v. HCN Office of Tribal Enrollment, CV 07-07 (HCN Tr.Ct., Mar. 26, 2007) at 6-8, 11-12 (permitting funding for a single academic year at Wentworth Military Academy & Junior College in Lexington, MO, due to the minor’s failing grades in public school coupled with demonstrated academic improvement in the private setting.) In relation to the latter case, the Court noted that it did “not necessarily wish to equate expulsion with exhaustion,” but that a close question emerged since “[t]he petitioner presented no facts showing [Reedsburg Area High School] culpable for the minor child’s abysmal academic record.” Id. at 11-12. Regardless, the High School Principal commented favorably upon the decision to attend a private institution. Id. at 7-8.
On the other end of the spectrum, the Court sanctioned the use of CTF monies for private school expenses at Interlochen Arts Academy in Interlochen, MI, because the minor child had demonstrated an extraordinary musical aptitude. The minor child could not receive the level of musical instruction commensurate with the minor’s skills and talents within a public school setting. In essence, the petitioner exhausted the available state entitlement because the public school proved lacking in its ability to prepare the minor for future obtainable ambitions. In the Interest of Minor Child: K.A.L., DOB 08/14/89, by Gary L. Lonetree, Jr. v. HCN Office of Tribal Enrollment, 6 Am. Tribal Law 268, 271-73, 274-75 (HCN Tr.Ct.2005).
Finally, the Court, former Associate Judge Pro Tempore Tina F. Gouty-Yellow presiding, granted CTF monies to allow a seventh grade child to attend St. John’s Northwestern Military Academy in Dela-field, WI, on the basis of the child’s aspirations to become a pilot and attend a collegiate military academy. In the Interest of Minor Child: T.W., DOB 04/09/93, by Sara WhiteEagle v. HCN Office of Tribal Enrollment, CV 05-73 (HCN Tr.Ct., Dec. 29, 2005) at 5, 7-8. In doing so, the Court announced:
*17 [It] is cognizant that prior rulings involving educational requests have been narrowly construed!,] and that by entering this decision the Court is expanding this area of the law. The Court believes that the prior decision(s) were issued at a time when the Nation had additional resources available to the parents regarding funding of private educational settings that are no longer available. Further, the Court contends that a quality education does more to serve the current and future needs of the child and of the Nation. It would be difficult to find a better investment of these funds than the’ best education for the Nation’s children.
Id. at 8. The Court later questioned the statement concerning a previously greater tribal funding availability since the former judge cited no authority for its “belief,” and respondent’s counsel later indicated that it provided no such grounds for the Court’s proposition. In the Interest of Minor Child: T.W., DOB 04/09/93, by Sara WhiteEagle v. HCN Office of Tribal Enrollment, CV 06-80 (HCN Tr.Ct., July 24, 2006) at 7 n. 2.
Within the subsequent year’s funding request submitted by Ms. WhiteEagle, the Court articulated the following:
[T]he Court is concerned by the petitioner’s statement that she maintained no concerns with the quality of education offered by the public school system. The Court cannot condone recourse to CTF monies On the basis of an abstract educational goal. Unlike Lonetree, the minor child in the instant case did not establish a degree of excellence in a chosen scholastic field. However, the minor child did demonstrate an uncharacteristic level of commitment to a chosen profession. Also, the minor child has unquestionably thrived in the new scholastic setting.
The Court must emphasize that the case at bar presents a close question. The presiding judge would have unlikely granted, the request when initially submitted for judicial consideration. One can easily conceive of future requests for private school expenses that only tangentially satisfy the four-prong test. The Court will conditionally grant the petitioner’s request since it does not wish to disrupt the expectations of the minor child. The Court also wants to sustain the witnessed academic improvement.
Id. at 12 (emphasis added). Moreover, the Court must not simply set aside a past judgment with which it later notes disagreement.[2] That being said, the Court is under no obligation to perpetuate seemingly flawed reasoning in future cases as Trial Court opinions do not carry precedential authority beyond actual parties to a dispute. See generality David Abangan v. HCN Dep’t of Bus., CV 01-08 (HCN Tr. Ct., July 16, 2003) at 15-19.
In those instances where the Court has granted requests, it has always required a parental contribution. WhiteEagle, CV 07-07 at 7, 12; WhiteEagle, CV 06-80 at 8, 12; Murphy, CV 06-67 at 7, 11-12; WhiteEagle, CV 05-73 at 8; Lonetree, at 272-73. The Court maintains, “[a]s a general proposition, [that] a child should not bear the cost of providing his or her elementary or high school education.” Nakai, CV 07-62 at 10. Furthermore, the Court has *18 stressed that a “parent must fulfill [his or] her inherent obligation to provide for the basic necessities of [a] minor child.” Murphy, CV 06-67 at 11.
Turning to the instant matter, the Court finds that attending St. Mary’s High School would benefit the education and welfare of J.M.T. as required by the first prong of the four-part test. Currently, the petitioner is supporting her family of four (4) individuals on her salary and her per capita payments. The petitioner’s husband is employed in Maryland, but it is likely he will earn very little income as his business is in its infancy. Mot Hr’g (LPER at 7, May 10, 2011, 02:06:22 CDT). The petitioner owns a valuable house in Wisconsin Dells, Wisconsin but according to real estate agents, selling the house at this time would likely result in a significant financial loss. Id. at 13, May 10, 2011, 02:29:00 CDT. The petitioner cannot afford to pay the tuition costs associated with J.M.T. attending St. Mary’s High School.
Ultimately, the Court must deny the petitioner’s request based on a failure to satisfy the interrelated second and fourth prongs of the four-part test. The petitioner must show the proposed benefit represents a need as opposed to a want or desire and exhaustion of alternative means. Crowe at 8. The Constitution of Maryland states that it “shall by Law establish throughout the State a thorough and efficient System of Free Public Schools” and further state law requires a “general system of free public schools.” Const, of Md„ Art. VIII, § 1.; Md. Education Code Ann. § 1-201 (2011). Preference of a Catholic private school over a public school alone does not rise to the level of an educational need. The petitioner articulated that J.M.T. has a special aptitude for singing and the performing arts and wishes to pursue a career in that field. Mot. Hr’g (LPER at 11, May 10, 2011, 02:20:00 CDT). Extraordinary aptitude in a specific field can raise enrollment in a private school to the level of an educational need. Lonetree at 271-73, 274-75. In such instances the petitioner must also show that the public schools are unable to satisfy that need. Id. The petitioner did not provide any such evidence. In fact, the petitioner did not research the local public schools’ performing arts programs. Id. at 11, 02:22:40 CDT. Therefore, even if St. Mary’s High School performing arts programs represent a need for J.M.T., the petitioner did not satisfy the exhaustion requirement of the four-part test. If the petitioner can show that the performing arts programs available to J.M.T. through St. May’s represent an educational need and obtains evidence that the public schools in the area cannot satisfy this need, the petitioner may re-file a Petition for Release of Per Capita Distribution, with the Court.
BASED UPON THE FOREGOING ANALYSIS, the Court hereby denies the petitioner’s request without prejudice. The Court commends the petitioner and J.M.T. for seeking an excellent education. However, the Court determines that the petitioner has not satisfied the second and fourth prongs of the four-part test, and therefore denies the request for a release of CTF monies. The parties retain the right to file a timely post judgment motion with this Court in accordance with HCN R. Civ. P. 58, Amendment to or Relief from Judgment or Order. Otherwise, “[a]ny final Judgment or Order of the Trial Court may be appealed to the Supreme Court. The Appeal must comply with the Rules of Appellate Procedure [hereinafter HCN R.App. P.], specifically Rules of Appellate Procedure, Rule 7, Right of Appeal.” HCN R. Civ. P. 61. The appellant “shall within sixty (60) calendar days after *19 the day such judgment or order was rendered, file with the Supreme Court Clerk, a Notice of Appeal from such judgment or order, together with a filing fee as stated in the appendix or schedule of fees.” HCN R.App. P. 7(b)(1). “All subsequent actions of a final Judgment or Trial Court Order must follow the [HCN R.App. P.].” HCN R. Civ. P. 61.

. The Ha-Chunk Nation Rules of Civil Procedure (hereinafter HCN R. Civ, P.) permit the Court to serve the Complaint upon the DOJ when the plaintiff/petitioner names as a party a unit of government or enterprise. HCN R. Civ. P. 27(B).

. The Court regards the initial WhiteEagle decision as possessing res judicata effect amongst the parties, provided that the petitioner continues to assert essentially the same claim in subsequent incarnations of the case. See Michael Sallaway et al. v. HCN Election Bd. et al., 7 Am. Tribal Law 192, 200-02 (HCN Tr.Ct.2007), aff'd, 7 Am. Tribal Law 47 (HCN S.Ct.2007).